**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARCIANO PLATA; OTIS SHAW; RAY STODERD; JOSEPH LONG; LESLIE RHOADES; GILBERT AVILES; PAUL DECASAS; STEVEN BAUTISTA; RAYMOND JOHNS; ELIJAH J. SANDOVAL; GARY ALAN SMITH; CLIFFORD MYELLE; DONDI VAN HORN, *Plaintiffs-Appellees*, <br><br> MEDICAL DEVELOPMENT INTERNATIONAL, *Petitioner-Appellee*, <br><br> v. <br><br> EDMUND G. BROWN, JR., Governor of the State of California; JEFFREY A. BEARD, Dr., Secretary of the California Department of Corrections and Rehabilitation; ANA J. MATOSANTOS, Director of the Department of Finance, *Defendants-Appellants*, <br><br>──────────── <br><br> J. CLARK KELSO, *Receiver-Appellee*. | No. 13-15466 <br><br> D.C. No. 3:01-cv-01351-TEH <br><br><br> OPINION |

Appeal from the United States District Court
for the Northern District of California
Thelton E. Henderson, Senior District Judge, Presiding

Argued and Submitted
September 11, 2013—San Francisco, California

Filed May 28, 2014

Before: Mary M. Schroeder and Jay S. Bybee, Circuit
Judges, and Ralph R. Beistline, Chief District Judge.[*]

Opinion by Judge Schroeder;
Dissent by Judge Bybee

---

## SUMMARY[**]

---

### Prisoner Civil Rights

The panel construed an appeal, filed by California
Governor Jerry Brown and state officials, as a petition for
writ of mandamus and so construed, denied the petition in an
ongoing prison class action concerning the provision of health
care in California prisons.

---

[*] The Honorable Ralph R. Beistline, Chief United States District Judge
for the District of Alaska, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has
been prepared by court staff for the convenience of the reader.

California prisons have been operating under a receivership since 2006 to comply with consent decrees aimed at curing egregious constitutional violations. After the State indicated that it would seek to terminate injunctive relief under the decrees, the district court ordered the State to disclose its expert witnesses and their reports 120 days before moving to terminate. The State contends that the district court's order impermissibly delayed its ability to move to terminate under the Prison Litigation Reform Act and also impermissibly delayed the automatic stay that would follow after thirty days elapsed without a district court decision on the termination motion. *See* 18 U.S.C. § 3626(b)(1), (e)(2).

The panel determined that because the district court's order was interlocutory and procedural in nature, and did not resolve any issue on the merits, the panel lacked appellate jurisdiction over the matter. The panel construed the appeal as a petition for writ of mandamus and considered the issues under the factors set forth in *Bauman v. United States District Court*, 557 F.2d 650, 654–55 (9th Cir. 1977).

The panel held that district court's order was a sensible scheduling order designed to provide the court and plaintiffs with adequate notice of the evidence the State intended to rely upon in a motion to terminate. The order established a schedule for expert disclosures that was consistent with the State's own time line, and it did not affect the operation of the Prison Litigation Reform Act's automatic stay. Because the panel upheld the district court's order as consistent with the provisions of the Prison Litigation Reform Act, it did not reach plaintiffs' claim that without the notice provisions of the order, the automatic stay provision violated due process.

Dissenting, Judge Bybee stated that the purpose and effect of the district court's order was to delay the operation of the Prison Litigation Act's automatic stay. Judge Bybee stated that the order was flatly inconsistent with the Prison Litigation Act both in text and in spirit.

## COUNSEL

Kamala D. Harris, Attorney General of California, Jonathan L. Wolff, Senior Assistant Attorney General, Thomas S. Patterson, Supervising Deputy Attorney General, Jose A. Zelidon-Zepeda (argued), Deputy Attorney General, San Francisco, California, for Defendants-Appellants.

Donald Specter, Rebekah Evenson, Kelly Knapp (argued), Prison Law Office, Berkeley, California, for Plaintiffs-Appellees.

## OPINION

SCHROEDER, Circuit Judge:

We deal with still another phase of litigation aimed at curing egregious constitutional violations in the operation of the California prison system. The Supreme Court in 2011 said the violations "remain uncorrected" after having "persisted for years." *Brown v. Plata*, 131 S. Ct. 1910, 1922 (2011). The Court there affirmed a three-judge district court order releasing prisoners in accordance with the strictures of the Prison Litigation Reform Act ("PLRA").

California prisons have been operating under a receivership since 2006 to comply with consent decrees. This appeal involves provisions of the PLRA relating to the termination of such decrees. Congress, concerned by what it viewed as unnecessary delays in bringing prison litigation to an end, provided that prison litigation defendants could move to terminate injunctive relief after two years, and that the injunction order would be subject to an automatic stay if the district court took more than thirty days to decide the motion. 18 U.S.C. § 3626(b)(1)(A)(i), (e)(2).

After the Supreme Court affirmed the three-judge court decision concerning the release orders in this case, the three-judge court in early 2013 asked the State when it intended to file a motion to terminate. The district court had appointed experts to evaluate the prisons' progress and had established a schedule for reporting.

The State, anxious to end the entire litigation, responded to the three-judge court in February 2013 that it hoped to be able to file a motion to terminate the injunctive relief within a few months. Plaintiffs indicated their need to file an informed response to any such motion, so the district court granted Plaintiffs' motion to reopen discovery. The court ordered the State to disclose its expert witnesses and their reports at least 120 days before it filed a motion to terminate relief. This would provide Plaintiffs and the court with the ability to understand and evaluate the basis for the motion.

The State filed a notice of appeal seeking our court's review of that order. The State contends that the order violates the PLRA by delaying its ability to move for termination and thus delaying the automatic stay that would follow after thirty days elapsed without a district court

decision on the motion. *See* 18 U.S.C. § 3626(b)(1), (e)(2). It is apparent from the record, however, that the order is a scheduling order to coordinate the filing of a termination motion with discovery disclosures. It was crafted to fit the State's own time line for seeking termination. While the PLRA authorizes the filing of a termination motion after two years, the State has not yet filed or attempted to file a motion to terminate. It is the nature of the litigation, not the district court's order, that prevented the State from filing a motion earlier.

It follows that the district court's order does not affect the availability of the automatic stay, since it would only be triggered thirty days after the filing of the motion, and then only if the district court failed to reach a decision within that time period. The district court has violated no statutory time limits.

The appropriateness of the order in this case becomes apparent with an understanding of the background of the PLRA and the historic complexity of this litigation. A time line of this litigation is attached as Appendix A.

With respect to appellate jurisdiction, we conclude that the order itself is not appealable, but the issues are sufficiently significant to warrant review by mandamus. We ultimately deny relief.

## STATUTORY BACKGROUND

Congress enacted the PLRA in order to expedite prison litigation and place control over prisons back into the hands of state and local officials. *See* 141 Cong. Rec. S14418 (daily ed. Sept. 27, 1995) (statement of Sen. Hatch); 141 Cong. Rec.

S14317 (daily ed. Sept. 26, 1995) (statement of Sen. Abraham). To address what Congress perceived as judicial micro-management of the nation's prisons, *see Gilmore v. California*, 220 F.3d 987, 996–97 (9th Cir. 2000), the PLRA established standards for the entry, enforcement, and termination of remedial relief in prison litigation, *Miller v. French*, 530 U.S. 327, 331 (2000).

Under the PLRA, a defendant in prison litigation may move to terminate any prospective relief two years after the date the court approved the relief. 18 U.S.C. § 3626(b)(1)(A)(i). The court must "promptly rule" on a motion to terminate, and mandamus shall lie where the court fails to do so. *Id.* § 3626(e)(1). In addition, a motion pursuant to the PLRA to terminate prospective relief operates as an automatic stay of the relief, beginning thirty days after the motion is filed and ending on the date the court rules on the motion. *Id.* § 3626(e)(2). The automatic stay may be postponed for up to sixty days for good cause, which does not include congestion of the court's calendar. *Id.* § 3626(e)(3).

## PROCEDURAL BACKGROUND

In 2001, Plaintiffs filed this class action lawsuit on behalf of California prisoners alleging that defects in the prison healthcare system violated the Eighth Amendment and the Americans with Disabilities Act. *Plata v. Schwarzenegger*, 603 F.3d 1088, 1091 (9th Cir. 2010). Early in the litigation, the parties entered into two consent decrees. The first, in 2002, required the State to implement various remedial measures to ensure the provision of constitutionally adequate healthcare in California prisons. *Id.* When little progress had been made by 2004, the parties entered into an additional consent decree designed to ensure the competency of medical

staff and establish appropriate procedures for identifying and treating high-risk patients. *Id.*

When no prison had successfully implemented these remedial measures by 2005, the district court issued an order to show cause as to why the State should not be held in contempt and why the court should not appoint a receiver to manage prison healthcare. *Id.* The court found that the State had "repeatedly delayed [its] progress and ultimately failed to achieve even a semblance of compliance" with the consent decrees. In early 2006, the court appointed a receiver. *Id.* at 1092.

In 2007, the district court granted Plaintiffs' motion to convene a three-judge court to address whether a prisoner release order was warranted. *Brown v. Plata*, 131 S. Ct. at 1922; *see also* 18 U.S.C. § 3626(a)(3) (PLRA provisions governing prisoner release orders). The three-judge court issued a prisoner release order after making the requisite findings under the PLRA, and the Supreme Court affirmed that order in 2011. *Brown v. Plata*, 131 S. Ct. at 1923.

In early 2012, the district court ordered the parties to meet and confer regarding post-receivership planning. Several months later, the district court entered an order setting forth a receivership transition plan, which included a requirement that court-appointed experts evaluate the state of medical care at each prison.

On January 29, 2013, the three-judge court directed the State to answer whether it intended to file a motion to terminate prospective relief in *Plata* and, if so, when it intended to file such a motion. Several weeks earlier, the State had moved to terminate prospective relief in *Coleman*

*v. Brown*, a related class action concerning mental healthcare in California prisons. The State had not indicated whether it would file a similar motion in *Plata*.

In its response filed February 12, 2013, the State represented that it would move to terminate relief if the court-appointed experts "fail to conduct an appropriate or timely evaluation of the prison medical care system," and that it would be ready to do so "in a few months." Concerned that they would not have sufficient time to prepare a response to the State's motion before the PLRA's automatic stay took effect, Plaintiffs filed an emergency motion to reopen discovery, and the court granted it.

The district court then entered the order on review here. The court found that it would be "fundamentally unfair" to allow the State an unlimited amount of time to prepare its motion to terminate, while providing Plaintiffs only the limited time allowed by the PLRA's automatic stay provision to prepare an adequate opposition. Citing the complexity of the case, the need for detailed factual inquiry to determine whether the case should be terminated, the restrictions of the PLRA's automatic stay provision, and the requirements of Federal Rules of Civil Procedure 26(a)(2)(A)–(C), the court ordered the State to disclose its supporting witnesses and reports at least 120 days prior to filing a termination motion.

The State filed a notice of appeal from the district court's order, arguing that it impermissibly extended both the time when defendants may move to terminate prospective relief under the PLRA and the time at which the PLRA's automatic stay would take effect. Plaintiffs question whether this court has jurisdiction to review the district court's order.

## APPELLATE JURISDICTION

There is a threshold issue of jurisdiction, for Plaintiffs point out that the district court's order is interlocutory, procedural in nature, and does not resolve any issue on the merits. They correctly contend that we lack appellate jurisdiction under 28 U.S.C. § 1291 dealing with appeals from final judgments, or under the principal avenues for appeal from interlocutory orders that decide the merits of claims or issues. *See* Fed. R. Civ. P. 54(b); *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949).

The State offers four grounds for appellate jurisdiction, none of which are sufficient. The State first argues that the district court's order is appealable as a post-judgment order. We have held that an order entered after the underlying dispute has been settled is appealable because it does not implicate the concern with avoiding piecemeal appellate review that underlies the final judgment rule. *United States v. State of Washington*, 761 F.2d 1404, 1406 (9th Cir. 1985); *see also Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1064 (9th Cir. 2010); *United States v. One 1986 Ford Pickup*, 56 F.3d 1181, 1184–85 (9th Cir. 1995). Review of the order here, however, does raise the problem of piecemeal review, because this particular litigation has been in the post-judgment, remedial phase since the entry of the first consent decree in 2002. Such consent decrees operate as final judgments. *Jeff D. v. Kempthorne*, 365 F.3d 844, 850 (9th Cir. 2004) ("[C]onsent decrees are considered final judgments . . . ."). The district court has since 2002 entered a number of orders designed to facilitate the State's compliance with the consent decrees and help draw this case to a close. If this order were immediately appealable as a post-judgment order, then every scheduling order setting the framework for further

proceedings in this case might also be immediately appealable. We therefore agree with the observation of the Seventh Circuit that each case management order implementing a consent decree cannot readily be considered a final post-judgment order for purposes of appeal. *United States v. Accra Pac, Inc.*, 173 F.3d 630, 632 (7th Cir. 1999).

The State also argues that the district court's order is appealable under the collateral order doctrine. This doctrine provides that some rulings that do not end the litigation will be deemed final because they are "too important to be denied review" and too independent of the merits of the case to require deferral of review. *Cohen*, 337 U.S. at 546; *see also Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009). To warrant review under the collateral order doctrine, the order must "(1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment." *Will v. Hallock*, 546 U.S. 345, 349 (2006) (citations omitted) (internal quotation marks omitted).

Plaintiffs point out that because the order is essentially a scheduling order, it does not conclusively determine or resolve any issue. Moreover, the State's argument regarding the collateral order doctrine suffers from the same problem as its argument with respect to post-judgment orders. The collateral order doctrine is a "narrow exception" that "should stay that way and never be allowed to swallow the general rule that a party is entitled to a single appeal . . . ." *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994) (internal citation omitted); *see also Mohawk Indus., Inc.*, 558 U.S. at 106. Applying the collateral order doctrine here would open the door to piecemeal review of a large class

of post-judgment case management orders designed to facilitate the close of litigation. *See Truckstop.net, LLC v. Sprint Corp.*, 547 F.3d 1065, 1068 (9th Cir. 2008) ("[W]hen a court identifies an order as an appealable, collateral one, it determines the appealability of all such orders." (citation omitted)). The order, therefore, is not appealable under the collateral order doctrine.

The State's final arguments regarding jurisdiction arise from the PLRA itself. The PLRA provides that "[a]ny order staying, suspending, delaying, or barring the operation of the automatic stay . . . shall be treated as an order refusing to dissolve or modify an injunction and shall be appealable pursuant to [28 U.S.C. §] 1292(a)(1) . . . ." 18 U.S.C. § 3626(e)(4). It also provides that the district court must promptly rule on any motion to terminate prospective relief, and that mandamus shall lie where the court fails to do so. *Id.* § 3626(e)(1). These PLRA provisions do not apply because the district court has not failed to rule on any motion to terminate. There has been none, so the district court's order does not delay the operation of an automatic stay that would be triggered only after such a motion is filed.

Lack of jurisdiction over an appeal does not necessarily foreclose review by this court if the issues raised are significant enough to warrant review by mandamus. *See, e.g.*, *Perry v. Schwarzenegger*, 591 F.3d 1147, 1157 (9th Cir. 2009) (holding that mandamus is appropriate to review a discovery order that raises novel and important questions); *Medhekar v. United States District Court*, 99 F.3d 325, 327 (9th Cir. 1996) (noting that mandamus is an especially appropriate vehicle for review where the court is confronted with an issue of first impression). We may construe an appeal of an otherwise non-appealable order as a petition for

writ of mandamus and consider the issues presented under the factors set forth in *Bauman v. United States District Court*, 557 F.2d 650, 654–55 (9th Cir. 1977). *Miller v. Gammie*, 333 F.3d 889, 895 (9th Cir. 2003) (en banc); *see also Special Invs. Inc. v. Aero Air Inc.*, 360 F.3d 989, 993 (9th Cir. 2004); *Cordoza v. Pac. States Steel Corp.*, 320 F.3d 989, 998 (9th Cir. 2003).

"Mandamus is an extraordinary remedy that may be obtained only to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Miller*, 335 F.3d at 895 (citation omitted) (internal quotation marks omitted). This court reviews the district court's order for clear error and grants the writ only where the district court has usurped its power or clearly abused its discretion. *Id.* (citation omitted). Under the five factors set forth in *Bauman*, we consider:

> (1) whether the petitioner has no other means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in any way not correctable on appeal; (3) whether the district court's order is clearly erroneous as a matter of law; (4) whether the district court's order is an oft-repeated error or manifests a persistent disregard of the federal rules; and (5) whether the district court's order raises new and important problems or issues of first impression.

*Perry*, 591 F.3d at 1156 (citing *Bauman*, 557 F.2d at 654–55).

Because the absence of the third factor—clear error by the district court—is dispositive, *Cordoza*, 320 F.3d at 998; *see also Perry*, 591 F.3d at 1156, we first address whether the district court clearly erred in requiring the State to disclose its experts and their reports 120 days prior to filing a motion to terminate prospective relief. The State maintains the order conflicts with the PLRA's provisions authorizing a termination motion after two years and that it interferes with what the State seemingly views as a statutory right to a stay. The court's order was not entered in a vacuum, however, and must be assessed in the context of the history of this litigation.

## THE DISTRICT COURT DID NOT CLEARLY ERR IN ISSUING THE ORDER THAT REQUIRES DISCLOSURE AND NOTICE

The district court's order was entered after twelve years of litigation and with an eye toward bringing it to a close. The district court had appointed experts to evaluate the state of medical care at the prisons, and the State had retained its own experts. The district court's order requires the State to provide the court and Plaintiffs with copies of its experts' reports at least 120 days before the State moves to terminate relief.

The PLRA itself, of course, provides that a defendant may move to terminate injunctive relief under a consent decree when two years have elapsed since its imposition. 18 U.S.C. § 3626(b)(1)(A)(i). The cases interpreting the statute make this clear. As the Seventh Circuit explained, "What subsection (b)(1) does is identify a class of cases that are eligible for termination: that is, cases in which a district court must entertain motions to terminate prospective relief. If two

years have elapsed since the decree was entered . . . then any party is entitled to file a motion seeking termination." *Berwanger v. Cottey*, 178 F.3d 834, 838 (7th Cir. 1999); *see also Gilmore*, 220 F.3d at 999 ("Thus, any prospective relief becomes terminable, at the latest, two years after its imposition."); *Cason v. Seckinger*, 231 F.3d 777, 780 (11th Cir. 2000) ("Section 3626(b)(1)(A) establishes specified time frames under which prospective relief is terminable upon motion of a party.").

The State in this case did not file a motion to terminate after two years. As a practical matter, the State in this particular case could not have moved to terminate after two years. At that point, medical care at the prisons had not come close to constitutional standards. In 2005—more than two years after the entry of the first consent decree—the district court found that "the California prison medical care system [was] broken beyond repair," resulting in an "unconscionable degree of suffering and death." A motion to terminate would likely have been futile.

The State has not indicated that it is ready to file a termination motion now. It nevertheless contends that the district court's order violates the PLRA by requiring the State to provide notice to the court and Plaintiffs before it files such a motion.

The PLRA does not mandate the filing of motions to terminate at any particular time. The district court in this case took no action that prevented the State from filing a motion. The State had never tried to file one and does not represent it is in a position to file one now.

The State apparently takes the view that the statute is violated because, if the State wanted to file a motion immediately, it would not be permitted to do so because of the court's order. The State's own representations, however, reflect that it is not ready to file a termination motion. In response to the January 2013 order of the three-judge court directing the State to answer whether it intended to file a motion to terminate, the State indicated that it would be prepared to bring such a motion "in a few months."

The district court's order was thus premised on the State's own representations as to when it might file a motion. The order is therefore not based on an interpretation of the statute, but upon the circumstances of this case. The State indicated that it would need several months to prepare a motion to terminate; the practical effect of the court's order is to require the State, while it is preparing its motion, to disclose the experts' reports upon which the motion will rely.

The district court's order does not preclude a request for modification of its terms; none has been made. The order is intended to provide the court and parties adequate notice of the evidence and the arguments supporting or opposing termination.

Moreover, nothing in the text of the PLRA prevents the district court from setting a schedule for expert disclosures. The district court's order is consistent with its broad authority to manage complex litigation. *See* Fed. R. Civ. P. 16; *United States v. W.R. Grace*, 526 F.3d 499, 509 (9th Cir. 2008) (noting that the court may issue case management orders designed to allow the parties to engage in appropriate discovery and adequately prepare their arguments). It may be for this reason the State's argument is couched in terms of a

violation of the PLRA, rather than an improper exercise of the court's case management authority.  In any event, we cannot fault the district court for wanting the parties to be informed and prepared when the State seeks to terminate relief.

Indeed, the Federal Rules of Civil Procedure require pretrial notice of the expert witnesses and reports to be relied upon.  *See* Fed. R. Civ. P. 26(a)(2)(A)–(E).  The dissent prefers to characterize the order as an artificial notice requirement imposed to create delay in this particular case, but it actually is an order for expert disclosures pursuant to the Federal Rules of Civil Procedure.

The relief ordered in this case is complex and has affected thirty-three different institutions for nearly twelve years.  *See Brown v. Plata*, 131 S. Ct. at 1939 (noting the "long history of failed remedial orders" in the case).  Providing Plaintiffs with notice that the State intends to file a motion to terminate will allow both the State and Plaintiffs to have an adequate record on which the district court may decide the merits of the motion.  With the benefit of informed briefing from both parties, the district court will be able to make a timely ruling on a motion to terminate, as the PLRA contemplates.  *See* 18 U.S.C. § 3626(e)(1).

It appears that the State's more practical concern is with obtaining the automatic stay that the PLRA mandates if the district court does not rule on the motion to terminate within thirty days.  *See id.* § 3626(e)(2).  The legislative history of the PLRA indicates that Congress was concerned about district courts taking too much time to decide termination motions and thus extending the life of decrees well beyond the filing of defendants' motions to terminate them.  H.R.

Rep. No. 104-21, at 26 (1995) ("By providing that the prospective relief that is subject to the motion will be stayed if the motion is not decided promptly, judges will be motivated to decide the motions and avoid having the stay automatically take effect."); *see also* 143 Cong. Rec. S12269 (daily ed. Nov. 9, 1997) (statement of Sen. Abraham) (noting that the purpose of the automatic stay provision is to "discourage delay" in ruling on motions to terminate). The automatic stay was thus not intended to reward the defendant filing a termination motion, but to provide an incentive for the district court to act promptly when such a motion is filed.

The State asserts that the court's order violates the statute by delaying the operation of the stay. Yet pursuant to the statute, the stay is triggered only by the district court's failing to decide a termination motion within thirty days. If no motion has been filed, there can have been no decisional delay triggering the stay.

The words of the statute expressly limit the judge's time to decide a motion to terminate. 18 U.S.C. § 3626(e)(2). They do not repeal the Rules of Civil Procedure that authorize discovery and require disclosure. They do not endorse sandbagging.

The district court's order is consistent with the Supreme Court's decision in *Miller v. French*, 530 U.S. 327. There the Court held that the PLRA prohibits district courts from exercising their equitable authority to suspend the operation of the automatic stay. *Id.* at 338. The order here does not affect the operation of the automatic stay. Any possible stay of relief is conditioned on two events that have not yet occurred: the filing of a motion to terminate, and the district court's failure to rule on that motion within the time allowed.

The State cannot file a motion to terminate until at least some of the experts' reports on the State's compliance are in. The district court's order does nothing more than coordinate the filing of a termination motion with the discovery each side wanted. It embodies the fundamental principle the Supreme Court laid down more than 60 years ago: "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).

The order thus also furthers the purpose of the automatic stay provision by ensuring that the district court has the information it needs to rule quickly on a motion to terminate. On the basis of the record before this court, there is no reason to hold the district court's order has prejudiced the State in any way.

## CONCLUSION

The district court's order is a sensible scheduling order designed to provide the court and Plaintiffs with adequate notice of the evidence the State intends to rely upon in a motion to terminate. The order establishes a schedule for expert disclosures that is consistent with the State's own time line, and it does not affect the operation of the automatic stay. There was no clear error in the district court's issuance of the order.

Because we uphold the district court's order as consistent with the provisions of the statute, we need not reach Plaintiffs' claim that without the notice provisions of the order, the automatic stay provision violates due process.

The State's appeal is construed as a Petition for Writ of Mandamus.  So construed, the petition is **DENIED**.

## APPENDIX A

**DATE**                    **EVENT**

April 5, 2001            Plaintiffs file their Complaint.

June 13, 2002           District court approves the parties'
                        stipulation and order for injunctive
                        relief.

September 17, 2004      District court approves the parties'
                        stipulation and order regarding the
                        quality of patient care and staffing.

May 10, 2005            District court orders the State to show
                        cause why it should not be held in
                        contempt for failing to comply with
                        prior orders and why the court should
                        not appoint a receiver to manage the
                        prison health care system.

October 3, 2005         District court issues its findings of fact
                        and conclusions of law regarding the
                        order to show cause.  District court
                        states that it will hold the contempt
                        citation in abeyance and establish a
                        receivership to remedy constitutional
                        violations.

| | |
|---|---|
| February 14, 2006 | District court appoints a receiver and suspends the authority of the Secretary of the California Department of Corrections and Rehabilitation. |
| November 13, 2006 | Plaintiffs move to convene a three-judge court to address whether prison overcrowding violates their constitutional rights. |
| July 23, 2007 | District court grants Plaintiffs' motion to convene a three-judge court. |
| July 26, 2007 | Ninth Circuit designates a three-judge court. |
| January 28, 2009 | State moves to replace the receiver with a special master and to terminate the receiver's plan regarding construction of additional prisons. |
| March 24, 2009 | District Court denies the State's motion to replace the receiver with a special master and to terminate the receiver's plan regarding construction of additional prisons. |
| August 4, 2009 | Three-judge court orders reduction of the prison population. |
| April 30, 2010 | Ninth Circuit affirms the district court's denial of the State's motion to replace the receiver with a special master and to terminate the receiver's |

plan regarding construction of additional prisons.

May 23, 2011 | Supreme Court affirms the order of the three-judge court requiring reduction of the prison population.

September 5, 2012 | District court issues an order setting forth a plan to transition from the receiver to a special master and to begin expert evaluations of California's prisons.

January 29, 2013 | Three-judge court directs the State to answer whether it intends to file a termination motion.

February 12, 2013 | State represents in its response and objections to the January 29, 2013 order of the three-judge court that if court-appointed experts "fail to conduct an appropriate or timely evaluation of the prison medical care system," the state will file a termination motion "in a few months."

February 14, 2013 | Plaintiffs move to reopen discovery.

February 19, 2013 | District court grants Plaintiffs' motion to reopen discovery.

February 21, 2013 | District court orders a schedule for expert disclosures should the state opt to file a termination motion.

| March 11, 2013 | State appeals the district court's February 21, 2013 order. |

BYBEE, Circuit Judge, dissenting:

This case arises out of serious constitutional violations throughout California's prison system. *Brown v. Plata*, 131 S. Ct. 1910 (2011). The complexity of the case notwithstanding, the sole issue before our panel is nominally procedural. The Prison Litigation Reform Act ("PLRA") provides that "[t]he court shall promptly rule on any motion to modify or terminate prospective relief in a civil action with respect to prison conditions." 18 U.S.C. § 3626(e)(1). If the district court has not "promptly rule[d]"before the 30th day after the filing of such a motion, the district court's injunction is automatically stayed. *Id.* § 3626(e)(2). For good cause, the district court may postpone the effective day of the automatic stay, up to 60 days. *Id.* § 3626(e)(3). The question presented here is: May the district court avoid the statute's strict timetable by requiring the State to give 120 days' notice before it files a motion to terminate? To ask the question is to answer it. The answer is plainly "no."

I respectfully dissent.

I

"[O]ne of the purposes of the [PLRA] was to restrict severely the intrusion of the judiciary into the operation of prisons." *Plata v. Schwarzenegger*, 603 F.3d 1088, 1095 (9th Cir. 2010). For this reason, the PLRA provides that prospective relief "shall extend no further than necessary to

correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a)(1)(A). Accordingly, a district court may not grant prospective relief with respect to prison conditions "unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." *Id.*; *see also id.* § 3626(b)(2).

In addition, the PLRA provides standards and timetables by which prospective relief may be terminated. There are two relevant provisions here. First, § 3626(b)(1) sets dates by which prospective relief becomes terminable:

> In any civil action with respect to prison conditions in which prospective relief is ordered, such relief *shall be terminable* upon the motion of any party or intervener–
>
>> (i) 2 years after the date the court granted or approved the prospective relief;
>>
>> (ii) 1 year after the date the court has entered an order denying termination of prospective relief under this paragraph; or
>>
>> (iii) in the case of an order issued on or before the date of enactment of the [PLRA], 2 years after such date of enactment.

*Id.* (emphasis added). As the verb "shall" indicates, this statutory timetable is mandatory. *See Alabama v. Bozeman*, 533 U.S. 146, 153 (2001) ("The word 'shall' is ordinarily the

language of command." (internal quotation marks and citation omitted)); *Our Children's Earth Found. v. EPA*, 527 F.3d 842, 847 (9th Cir. 2008) ("When Congress specifies an obligation and uses the word 'shall,' this denomination usually connotes a mandatory command."). "Thus, any prospective relief becomes terminable, at the latest, two years after its imposition." *Gilmore v. Californi*a, 220 F.3d 987, 999 (9th Cir. 2000).

Second, the PLRA accelerates rulings on motions for termination. Specifically, the PLRA provides that district courts "shall promptly rule" on such motions and authorizes mandamus relief for failure to do so. 18 U.S.C. § 3626(e)(1). What is more, injunctive relief is automatically stayed 30 days after the filing of a motion to terminate, subject only to a 60-day postponement for "good cause." *Id.* § 3626(e)(2), (3). This automatic stay provision acts as an enforcement mechanism on district courts to ensure prompt rulings on motions for termination.[1] Finally, the PLRA contains an immediate appeal provision. Section 3626(e)(4) states that "[a]ny order staying, suspending, delaying, or barring the operation of the automatic stay" imposed by § 3626(e)(2) "shall be appealable" pursuant to 28 U.S.C. § 1292(a)(1).

II

---

[1] The automatic stay does not permanently dissolve the injunction. Instead, it stays the injunction "during a fixed period of time, *i.e.*, from 30 (or 90) days after the motion is filed until the court enters a final order ruling on the motion." *Miller v. French*, 530 U.S. 327, 337 (2000). As soon as the district court makes written findings based on the record that prospective relief remains necessary, extends no further than necessary, and is narrowly drawn, the automatic stay is lifted. 18 U.S.C. § 3626(b)(3).

On February 12, 2013, the State represented to the district court that it was considering filing a motion to terminate. In response, plaintiffs requested that discovery be reopened to allow them to investigate current conditions in California's prison system in anticipation of the State's motion to terminate prospective relief. The district court granted plaintiffs' request and ordered the State to disclose its expert witnesses and their reports at least 120 days *before* it filed a motion to terminate. In the district court's view, it would be fundamentally unfair to give the State unlimited time to prepare its motion to terminate while allowing plaintiffs only the time allowed by the PLRA's automatic stay to prepare their opposition in such a complex case. The State promptly sought relief from this court.

The district court's order violates the plain and unambiguous command of the PLRA that *all* prospective relief orders "become[] terminable, at the latest, two years after [their] imposition." *Gilmore*, 220 F.3d at 999; *see also Berwanger v. Cottey*, 178 F.3d 834, 838 (7th Cir. 1999) ("What subsection (b)(1) does is identify a class of cases that are *eligible* for termination: that is, cases in which a district court must entertain motions to terminate prospective relief."). Congress did not carve out any exceptions to this mandate, not even for complex cases involving large prison systems. The State therefore had the right to move for termination at any point 2 years after relief was entered. 18 U.S.C. § 3626(b)(1)(i). More than a decade after relief was first entered, however, the district court stripped the State of its right to move for termination and, contrary to the express provisions of the statute, imposed an additional 120-day waiting period in the name of fairness.

Furthermore, the district court's concerns regarding the expedited timetable for the termination of prospective relief cannot justify a departure from the statute's clear mandate. The PLRA imposes an automatic stay on injunctive relief 30 days after the filing of a motion to terminate to ensure that district courts rule promptly on such motions. 18 U.S.C. § 3626(e)(2). For good cause, however, the district court may postpone the effective date of the automatic stay for up to an additional 60 days. *Id*. § 3626(e)(3). Good cause presumably exists in unusually complex cases like this one. Accordingly, there is no reason to go beyond the statute in search of fairness. Congress has already weighed the competing interests and has struck what it believes to be the appropriate balance.

The purpose and effect of the district court's order is to delay the operation of the automatic stay. *See Id.* § 3626(e)(2), (3), (4). As the Supreme Court has explained, however, "[v]iewing the automatic stay provision in the context of § 3626 as a whole [ ] confirms that Congress intended to prohibit federal courts from exercising their equitable authority to suspend operation of the automatic stay." *Miller*, 530 U.S. at 338. Thus, the order is flatly inconsistent with the PLRA, both text and spirit.

III

The majority rationalizes the district court's order by arguing that it is "consistent with [the district court's] broad authority to manage complex litigation." Maj. Op. at 16. In fact, the majority says, the order is based not "on an interpretation of the statute, but [rather on] the circumstances of this case." Maj. Op. at 16.

The Supreme Court addressed this argument in *Miller v. French*. There, two circuits had ruled that federal courts, "in the exercise of their traditional equitable authority, [could] enjoin operation of the PLRA's automatic stay provision." 530 U.S. at 336. The Court rejected these rulings:

> To allow courts to exercise their equitable discretion to prevent the stay from "operating" during this statutorily prescribed period would be to contradict § 3626(e)(2)'s plain terms. It would mean that the motion to terminate merely *may* operate as a stay, despite the statute's command that it "shall" have such effect. . . .
>
> Viewing the automatic stay provision in the context of § 3626 as a whole [ ] confirms that Congress intended to prohibit federal courts from exercising their equitable authority to suspend operation of the automatic stay.

*Id.* at 338. Significantly, the Court observed that "curbing the equitable discretion of district courts was one of the PLRA's principal objectives." *Id.* at 339. Where a statutory scheme makes it clear that a court "has no authority to create equitable exceptions to jurisdictional requirements," the "use of the 'unique circumstances' doctrine is illegitimate." *Bowles v. Russell*, 551 U.S. 205, 214 (2007).

Next, the majority asserts that "nothing in the text of the PLRA prevents the district court from setting a schedule for expert disclosures." Maj. Op. at 16. I agree that the PLRA does not expressly forbid district courts from setting

discovery schedules, but the point is irrelevant. By compelling district courts to adhere to a strict timetable, the PLRA forbids them from adopting a rule or procedure or schedule inconsistent with its statutory mandate.**[2]** We expect district courts to exercise their authority and judgment to manage complex litigation, but they must do so within the PLRA's parameters.**[3]** Just because district courts have broad discretion to manage cases does not mean that they may exercise that discretion in derogation of the United States Code or the Federal Rules of Civil Procedure. Indeed, the essence of an *abuse* of discretion is for the district court to exercise its discretion in the face of a contrary rule of law. *See Koon v. United States*, 518 U.S. 81, 100 (1996) ("A district court by definition abuses its discretion when it makes an error of law."); *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 956 (9th Cir. 2013) ("[A]n error of law is a per se abuse of discretion.").

In addition, the majority emphasizes that the State did not file a motion to terminate 2 years after relief was entered, that a motion filed at that time likely would have been futile, and

---

**[2]** The majority also states that the Federal Rules of Civil Procedure require pretrial disclosure of expert witnesses and reports. Maj. Op. at 17. I agree with that statement but fail to see its significance in this case. Yes, Federal Rule of Civil Procedure 26(a)(2) requires expert disclosures, but it does not mandate their *timing* here. There is no conflict between Rule 26(a)(2) and the PLRA. Rule 26(a)(2) cannot possibly justify the district court's variance from the PLRA's mandatory timetable.

**[3]** In this case, for example, the district court was free to set a schedule for expert disclosures during the 2-year period after the consent decree was entered. Now that the 2-year period has passed, however, the PLRA prevents the district court from setting a schedule for expert disclosures if that schedule prevents the State from filing its motion at the time of its choosing. 18 U.S.C. § 3626(b)(1).

that the State is not ready to file its motion even now. Maj. Op. at 15. This line of reasoning loses sight of the issue before us. We are not reviewing the timing or merit of the State's motion at this juncture; we are reviewing the district court's order that the State give 120 days' notice before it files any motion to terminate. In my view, the likely futility of filing a motion years ago and the readiness of the State to file today are irrelevant to the question of whether the district court's order violated the PLRA. And on that issue, the analysis is clear: the PLRA does not allow district courts to extend the mandatory timetable for the filing of motions to terminate prospective relief, as did the district court's order here.

Finally, the majority contends that the State has not triggered the automatic stay provision's 30-day clock because it has not yet filed a motion to terminate prospective relief. Maj Op. at 18. That is correct as far as it goes, but blaming the State for failing to trigger the 30-day clock ignores the fact that the district court has intervened to delay the triggering event itself. The federal courts cannot circumvent congressional intent so easily. Thus, although I agree with the majority that the 30-day clock is not yet ticking, I nonetheless would conclude that the district court's order delays the operation of the automatic stay.[4] Were it not so, a district

---

[4] Accordingly, unlike the majority, I would review this appeal under 18 U.S.C. § 3626(e)(4) ("Any order . . . delaying . . . the operation of the automatic stay . . . shall be treated as an order refusing to dissolve or modify an injunction and shall be appealable pursuant to section 1292(a)(1) of title 28, United States Code, regardless of how the order is styled."), rather than as an exercise of our mandamus jurisdiction under the All Writs Statute, 28 U.S.C. § 1651. Maj. Op. at 12–14; *see* 18 U.S.C. § 3626(e)(1) (authorizing an action in mandamus).

court could simply prohibit all motions to terminate and evade the operation of the automatic stay entirely.[5]

## IV

As courts of law, we are frequently called upon to enforce timetables prescribed by statute or rule. Sometimes these are jurisdictional. *See*, *e.g.*, *Bowles*, 551 U.S. at 208–15 (enforcing 28 U.S.C. § 2107's deadline for filing an appeal even though the petitioner had filed his notice within the extended period granted by the district court). Sometimes they are not. *See*, *e.g.*, *United States v. Luk*, 859 F.2d 667, 669 n.2 (9th Cir. 1988) (denying as untimely a motion for limited remand). We do not hesitate, notwithstanding our concerns with separation of powers or federalism, to enforce statutory deadlines against the executive branch or against state entities. *See*, *e.g.*, *Citizens for Responsibility & Ethics in Wash. v. FEC*, 711 F.3d 180, 190 (D.C. Cir. 2013) (enforcing against the FEC a 20-day deadline for making and communicating a "determination" in response to a FOIA request); *Withrow v. Concannon*, 942 F.2d 1385, 1387 (9th Cir. 1991) (holding that state agency must strictly comply with federal regulations requiring administrative action within 90 days from the date a hearing is requested).

And, although less common, Congress sometimes has imposed strict deadlines on us as well. *See*, *e.g.*, 28 U.S.C. § 1453(c)(2), (3) (requiring the courts of appeals to "complete

---

[5] Plaintiffs argue that the district court's order is necessary to protect their due process right to an opportunity to fully and adequately prepare a response to the State's motion to terminate. The majority has not addressed the issue. It seems like a stretch. *See Gilmore*, 220 F.3d at 1008 ("No circuit court has found the PLRA to violate due process.").

all action on [review of a remand order under CAFA], including rendering judgment, not later than 60 days after the date on which such appeal was filed" unless "all parties to the proceeding agree to such extension, for any period of time" or "such extension is for good cause shown and in the interests of justice, for a period not to exceed 10 days"). We don't like it, but we have nevertheless self-enforced such deadlines, even when we have been tempted to extend the deadline because of "circumstances." *See Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 398 (9th Cir. 2010) ("[A]n appeal must be decided within 60 days after it is filed. 28 U.S.C. § 1453(c)(2). Hence, we are required to decide this appeal no later than November 22, 2010, 60 days after the petition for appeal was granted."); *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 996–97 (9th Cir. 2007) (granting ourselves the 10-day extension for "good cause," but noting that one of the parties refused to grant the court any further extension), *overruled on other grounds by Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1350 (2013).

Sometimes we have exercised our discretion to extend statutory or regulatory deadlines when we have felt that tolling or some other equitable principle has demanded it. *See*, *e.g.*, *Wong v. Beebe*, 732 F.3d 1030, 1033 (9th Cir. 2013) (en banc) (holding that equitable tolling of the statute of limitations is available in FTCA actions); *Avagyan v. Holder*, 646 F.3d 672, 679 (9th Cir. 2011) (finding that petitioner may obtain equitable tolling during periods when he is prevented from filing a motion to reopen removal proceedings "because of a deception, fraud, or error, as long as petitioner acts with due diligence" (internal quotation marks and citation omitted)); *Bills v. Clark*, 628 F.3d 1092, 1099–1100 (9th Cir. 2010) (articulating a two-part test to determine whether a mental impairment amounts to an "extraordinary

circumstance" warranting equitable tolling under AEDPA). But there is no room in this statute for an equitable argument. Congress has made it plain that the State may file its motion to terminate after 2 years, that the district court "shall promptly rule" on the State's motion, and that the State's motion "shall operate" as an automatic stay after 30 days until the district court enters its final order ruling on the motion. 18 U.S.C. § 3626(e)(1). Congress's decision to impose such strict deadlines may well affect the substantive arguments that counsel will be able to make in defense of the injunction, but that is a consequence of Congress's choices and is not avoidable by the exercise of our discretion.

V

Absent statutory interference, district courts have broad discretion in managing their cases. But here, the PLRA decrees that all prospective relief orders become terminable, at the latest, 2 years after their imposition. Not 2 years and 1 day, and certainly not 2 years and 120 days, as required by the district court's order and upheld by the majority today. I respectfully dissent.